IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

LADONNA JOHNSTON                                                    PLAINTIFF

v.                              Case No. 3:12-CV-03093

BAXTER INTERNATIONAL INCORPORATED
and BAXTER HEALTHCARE CORPORATION                        DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff LaDonna Johnston brings this action pursuant to the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, alleging Defendants Baxter International Incorporated and Baxter Healthcare Corporation (collectively "Baxter") wrongly denied her claim for disability benefits.  Before the Court are the Administrative Record (Doc. 17), Plaintiff's Brief (Doc. 20), and Defendant's Brief (Doc. 22).  For the reasons stated herein, the Court finds that  Defendant's decision to deny benefits is AFFIRMED, Plaintiff's claim is DENIED, and this case is DISMISSED with prejudice.

### I. Background

Plaintiff worked full time at Baxter as an Extruder/Blender Operator in a department that manufactured plastic sheeting.  Her tasks included operating, monitoring, and performing minor repairs on production equipment.  Her last day of work for Baxter was on May 16, 2010, when she left work early due to an ear infection.  On May 17, 2010, Plaintiff called in sick.  On May 18, 2010, Plaintiff contacted the human resources department of Baxter to begin taking leave pursuant to the Family Medical Leave Act ("FMLA"); however, she learned the same day that she did not qualify for FMLA leave and, further, that her employment could be terminated due to her attendance record

alone. On May 19, 2010, Plaintiff filed a claim for short-term disability benefits pursuant to Baxter's Subsidiaries Welfare Benefit Plan for Active Employees ("Plan").

In support of Plaintiff's claim for disability benefits under the Plan, she submitted medical records from her doctors. Dr. Safwan Sakr of Baxter Rheumatology Clinic submitted a report dated January 13, 2010, stating that Plaintiff had a greater than five-year history "of [] wide spread joint[] and muscle[] ache associated with fatigue, poor sleep and depression. The [patient] reported an extensive W/U by a neurologist . . . but no specific diagnosis was reached . . . the [patient] reported transient peripheral joint[] swelling with constant stiffness." (Doc. 17-2, p. 13). Dr. Sakr diagnosed Plaintiff with fibromyalgia syndrome and general anxiety disorder/depression. He recommended that Plaintiff undergo a laboratory work-up and prescribed pain medication and participation in aquatic aerobics three times per week.

Dr. Caleb Gastor of North Central Arkansas Medical Associates examined Plaintiff on June 14, 2010 to follow up on her complaint of "leg pain." *Id.* at p. 18. Dr. Gastor reported that Plaintiff believed she could no longer work at her job "because of her pain and fatigue." *Id.* She told him that if she climbed a spiral staircase at work more than two or three times a day, she would be "done for the day." *Id.* Dr. Gastor diagnosed Plaintiff with fibromyalgia and bilateral lower limb pain and instructed her to seek a neurology evaluation. He described Plaintiff's condition as "chronic." As for particular work limitations, Dr. Gastor noted on his report that Plaintiff was unable to perform "standing [and] stairs" as part of her job functions, but did not specify whether the restrictions were temporary or permanent in nature or limited to a certain number of hours per day. *Id.* at p. 20.

Dr. Gastor also filled out a U.S. Department of Labor certification form on Plaintiff on June 14, 2010, the same day she came in for a consultation. The Department of Labor form was required

to substantiate Plaintiff's claim for FMLA leave.[1]  Dr. Gaston indicated on this form that Plaintiff had "pain severe enough to not function @ job" and recommended that Plaintiff be absent from work during "flare-ups" which he stated could occur approximately six times per month for three days at a time.  *Id.* at p. 22.

On June 14, 2010, Baxter's claims administrator, Liberty Mutual, wrote Plaintiff a letter in which it explained its decision to deny her initial application for short-term disability benefits.  Liberty Mutual determined that the medical information submitted by Plaintiff's doctors to date had failed to show that Plaintiff was unable to perform the duties of her job due to her fibromyalgia.  In particular, Plaintiff's medical file lacked documentation to substantiate a severe level of pain that precluded Plaintiff from performing her main job functions, including standing, walking, lifting up to 50 pounds occasionally, and operating machinery.  Liberty Mutual additionally found that Plaintiff's diagnoses of anxiety and depression did not currently impact her ability to work, as the "medical documentation on file [did] not support any restrictions and limitations" related to anxiety and depression.  *Id.* at p. 26.  The denial letter concluded as follows: "Based on the medical information in relation to your job requirements, you are able to perform the duties of your job at Baxter International Inc.  Therefore, you do not meet your Plan's definition of disability, and we must deny your claim for benefits."  *Id.*

On December 7, 2010, Plaintiff appealed the decision to deny her short-term disability benefits.  Plaintiff submitted 50 additional pages of medical documentation to support her claim, including more records from Dr. Gaston and a November 1, 2010 neuropsychological assessment

---

[1] As explained earlier, Plaintiff's employer informed her shortly after she stopped working that she did not qualify for FMLA leave.

by Dr. Vann Smith.

Plaintiff's medical file was then independently reviewed at Baxter's request by Dr. Gregg Marella, a board-certified, internal medicine physician.  Dr. Marella concluded that the medical evidence supported a diagnosis of chronic limb pain, thought to be myofascial in etiology, as well as anxiety and depression.  (Doc. 17-3, pp. 99-101).  However, Dr. Marella did not find adequate documentation in the medical file supporting a finding that Plaintiff's limb pain would interfere with her doing her job.  He noted a lack of rheumatology, physiatry, or pain management consultations in the file.  He further noted that if Plaintiff's pain were very intense or if there were neurological findings regarding the degree of Plaintiff's pain, then perhaps a work restriction might be appropriate.  As the record stood, however, no such medical findings were present, and therefore, Plaintiff was able to work without restrictions.

Plaintiff's file was also reviewed at Baxter's request by Dr. Melvyn Attfield, who is board certified in neuropsychology and psychopharmacology.  Dr. Attfield evaluated Dr. Smith's neuropsychological assessment of Plaintiff and determined that Dr. Smith's conclusions were not supported by objective testing.  Specifically, Dr. Attfield stated that Dr. Smith had failed to conduct a formal pain assessment, functional status questionnaire, or objectively scored personality test for Plaintiff before diagnosing her with cognitive dysfunction.  Dr. Attfield therefore discounted Dr. Smith's clinical findings as "methodologically and conceptually flawed."  *Id.* at p. 103.

On January 25, 2011, Liberty Mutual sent Plaintiff another letter, this time informing her that after review, it had decided to uphold its initial denial of disability benefits.  There were two main reasons for the continued denial.  First, Dr. Attfield had discredited Dr. Smith's neuropsychological assessment of Plaintiff, and therefore, Dr. Smith's medical conclusions were not given weight by

Baxter's administrative committee.  Second, the medical file reflected an overall "absence of clinical evidence that validates a level of impairment that would have prevented [Plaintiff] from performing the duties of her job continuously from May 17, 2010," and thus, Plaintiff "did not meet the definition of disability or meet the Baxter International Inc. STD Plan provisions to qualify for benefits."  *Id.* at p. 6.

Following the denial of Plaintiff's first appeal, she made her second and final appeal of Baxter's adverse disability determination on July 11, 2011.  Plaintiff provided Baxter with additional medical records from her treating physicians, as well as the results of an MRI of her cervical spine, taken on July 1, 2010, which revealed no compression fractures and no marked abnormalities. Plaintiff also supplied Baxter with a copy of the Social Security Administration's decision to grant her application for Social Security disability benefits.

Among the medical records submitted with the second appeal, Plaintiff included reports from Dr. Richard Tompson, a rheumatologist, for patient consultations on January 31, 2011 and February 10, 2011.  Dr. Tompson diagnosed Plaintiff with low back pain, muscle spasms, limb pain, and dysfunction associated with sleep disturbance.  He described her pain as "aggravated by all activity" and with  "constant aching," and he reported that her ability to perform activities of daily life was "greatly limited by pain;" however, Dr. Tompson did not suggest in his reports that Plaintiff was completely unable to work or that she had specific work restrictions.  (Doc. 17-2, pp. 84-85).

On August 4, 2011, Baxter commissioned Dr. Sushil Sethi to conduct an independent review of Plaintiff's medical file, including all documents submitted by Plaintiff to date from her treating physicians.  *Id.* at p. 50.   Dr. Sethi concluded that although Plaintiff appeared to have generalized body pain, she did not present objective evidence or laboratory or diagnostic findings indicating that

this pain restricted her range of motion or resulted in neuromuscular, cardiovascular, or neurovascular deficits. *Id.* at 54. Because there were no objective physical or laboratory findings regarding Plaintiff's inability to perform the substantial and material duties of her job on a full time basis, Dr. Sethi determined that she was not disabled. *Id.* at p. 55.

On August 16, 2011, Plaintiff's second appeal for benefits was denied by Baxter in writing. *Id.* at pp. 1-2. Having exhausted her administrative remedies, Plaintiff filed a Complaint in this Court on July 23, 2012, seeking review of Defendant's denial.

## II. Standard of Review

Generally, once a plaintiff has exhausted her administrative remedies, the court's function is to conduct a review of the record that was before the administrator of the plan when the claim was denied. *Farfalla v. Mutual of Omaha Ins. Co.*, 324 F.3d 971, 974-75 (8th Cir. 2003); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). A denial of benefits claim under ERISA is reviewed for an abuse of discretion when "a plan gives the administrator discretionary power to construe uncertain terms or to make eligibility determinations." *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 998-99 (8th Cir. 1997) (en banc) (citing *Firestone*, 489 U.S. at 111). When a plan confers discretionary authority, then the Court must defer to the determination made by the administrator or fiduciary unless such determination is arbitrary and capricious. *Firestone*, 489 U.S. 115. "[R]eview for an 'abuse of discretion' or for being 'arbitrary and capricious' is a distinction without a difference" because the terms are generally interchangeable. *Jackson v. Prudential Ins. Co. of Am.*, 530 F.3d 696, 701 (8th Cir. 2008), citing *Schatz v. Mutual of Omaha Ins. Co.*, 220 F.3d 944, 946 n.4 (8th Cir. 2000).

The Court finds that in the case at bar, abuse of discretion is the proper standard of review.

The Plan grants discretionary authority to Baxter to both interpret and administer its provisions. (Doc. 17-1, p. 65). Baxter is not, however, the Plan's insurer. A separate entity insures the Plan. Baxter contracts with Liberty Mutual to serve as Baxter's claims administrator for purposes of each claimant's initial claim and appeal only. Considering these facts, a heightened standard of review due to a structural conflict of interest is not warranted, as Baxter does not simultaneously determine eligibility for benefits and pay benefits out of its own pocket as insurer. *See Atkins v. Prudential Ins. Co.*, 404 F. App'x 82, 86 (8th Cir. 2010) (structural conflict of interest is factor to consider on review of ERISA-based claim when same party is both insurer and claims administrator).

The law is clear that the decision of a plan administrator may only be overturned if it is not "reasonable, i.e., supported by substantial evidence." *Donaho v. FMC Corp.*, 74 F.3d 894, 899 (8th Cir. 1996). An administrator's decision will be deemed reasonable if "a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." *Id.* If a decision is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation could have been made. *Cash v. Wal-Mart Group Health Plan*, 107 F.3d 637, (8th Cir. 1997), citing *Donaho*, 74 F.3d at 899.

Furthermore, "an ERISA plan administrator or fiduciary generally is not bound by [a Social Security Administration] determination that a plan participant is disabled." *Jackson v. Metro Life Ins. Co.*, 303 F.3d 884, 889 (8th Cir. 2002). Here, Plaintiff was awarded Social Security disability benefits; however, Baxter was not obligated under law to take the Social Security Administration's decision into account when deciding whether to award benefits pursuant to the provisions of the Plan. *Jackson*, 303 F.3d at 889 (discussing why determinations of the Social Security Administration are not binding on a plan fiduciary, pursuant to ERISA). Accordingly, it was not an

abuse of discretion for Baxter to have come to a different conclusion regarding disability benefits than the Social Security Administration.

The Court's task now is to analyze whether Baxter's decision to deny benefits to Plaintiff should be overturned.  In considering this question, the Court must examine the basis behind the denial and determine if the decision was supported by substantial evidence.  This evidence should be assessed by its quantity and quality, and this review, "though deferential, is not tantamount to rubber-stamping the result." *Torres v. Unum Life Ins. Co. of Am.*, 405 F.3d 670, 680 (8th Cir. 2005).

There are five factors the Court will consider to determine whether Baxter's decision was reasonable:

> (1) whether the administrator's interpretation is consistent with the goals of the Plan;
> (2) whether the interpretation renders any language in the Plan meaningless or internally inconsistent;
> (3) whether the administrator's interpretation conflicts with the substantive or procedural requirements of the ERISA statute;
> (4) whether the administrator interpreted the relevant terms consistently; and
> (5) whether the interpretation is contrary to the clear language of the Plan.

*Id.* (citing *Shelton v. ContiGroup Cos., Inc.*, 285 F.3d 640, 643 (8th Cir. 2002)).

## III.  Discussion

Pursuant to the Eighth Circuit's holding in *Shelton v. ContiGroup*, the first factor the Court must consider in evaluating the reasonableness of Baxter's denial of ERISA benefits is whether Baxter's interpretation of the Plan is consistent with the goals of the Plan.  285 F.3d at 643.  The Plan's goal, as stated in the "Establishment and Purpose" section, is "(i) to offer eligible Employees an opportunity to obtain certain health, dental, life, accident, disability and other benefits; (ii) to provide eligible Employees an opportunity to pay for certain benefits on a pre-tax basis; and (iii) to provide eligible Employees an opportunity to fund certain qualifying unreimbursed Healthcare

Expenses and certain qualifying Dependent Care Expenses on a pre-tax basis."  (Doc. 17-1, p. 6).

The Plan defines a "disability" as follows:

> To be considered disabled under the Plan because of an injury, illness, or pregnancy, you must:
> - be continuously unable to perform the substantial and material duties of your current job on a full time basis (your regular pre-disability work schedule); and
> - be under the regular care of a licensed physician (other than a family member or yourself, if you are a physician).

*Id.* at p. 119.

Considering the Plan's goal of providing benefits to employees who are considered disabled such that they are continuously unable to perform the substantial and material duties of their current jobs on a full time basis, it is the Court's determination that Baxter reasonably interpreted the medical data present in Plaintiff's medical file and found her ineligible for short-term disability benefits.

The record reflects that Plaintiff stopped working on May 17, 2010, due to an ear infection, and never returned to work.  It appears from the notes of her treating physicians that Plaintiff had a history of medical issues predating her last day of work.  These medical issues included wide spread joint and muscle pain, poor sleep, fatigue, and depression.  However, there is no explanation in Plaintiff's medical file, from her treating physicians or from other sources, as to why Plaintiff's levels of pain suddenly rendered her completely unable to work in any capacity beginning in May of 2010.

Although several of Plaintiff's treating physicians reported that Plaintiff suffered from fibromyalgia and had chronic pain and related symptoms, none of these physicians prescribed specific work restrictions prior to May of 2010 or addressed in their reports how Plaintiff's pain

made her continuously unable to perform the duties of her particular job on a full time basis after May of 2010.

The physicians who reviewed Plaintiff's paper file on administrative appeal, including Drs. Marella, Attfield, and Sethi, considered the opinions of Plaintiff's treating physicians and concluded that Plaintiff did not present objective evidence or laboratory or diagnostic findings indicating that her fibromyalgia was severe enough to impact her ability to do her job. Even conceding that Plaintiff's pain, sleeplessness, and depression qualified as an "illness" under the Plan, the Plan specifically provided that disability benefits were only to be paid if the claimed illness rendered Plaintiff completely unable to perform the substantial and material duties of her current job. As Plaintiff's medical records did not provide objective evidence that her illness qualified as a disability under the Plan, the first *Shelton* factor weighs in favor of Baxter. The Court concludes that Baxter's decision to deny Plaintiff disability benefits was not contrary to the goals of the Plan and was, in fact, reasonable and supported by the objective evidence.

The second factor in evaluating Defendant's denial of benefits is whether Defendant's interpretation of the Plan rendered any language in the Plan meaningless or internally inconsistent. *Shelton*, 285 F.3d at 643. Since the Plan requires an employee making a claim for disability benefits to show not merely that she has an "illness," but that this illness renders her "continuously unable to perform the substantial and material duties" of her particular job with Baxter, Baxter's decision to deny benefits to Plaintiff was a proper interpretation of Plan language. Plaintiff's claim for disability benefits was denied according to the Plan's definition of "disability," due to Plaintiff's failure to provide objective evidence correlating her illness with her ability to perform her job duties.

The remaining three of the five factors announced in *Shelton* are: (1) whether the

administrator's decision to deny benefits conflicts with the substantive or procedural requirements of the ERISA statute; (2) whether the administrator interpreted the relevant terms at issue consistently; and (3) whether the administrator's interpretation is contrary to the clear language of the Plan.  In considering these factors, the Court finds that Baxter acted carefully, reasonably, and appropriately in evaluating Plaintiff's claim in light of the Plan's terms.  Plaintiff was afforded a full and fair review of both the denial of her claim and the appeal of that denial.  Baxter relied not only on the opinions of several of its own reviewing physicians but also on the opinions of Plaintiff's own physicians.  The reviewing physicians considered the entire medical record now before the Court, and, it appears, tended to agree that Plaintiff's treating physicians had accurately diagnosed her with fibromyalgia.  The only treating physician whose opinion was not credited by the reviewing physicians was Dr. Vann Smith.  It is important to note, however, that Dr. Smith's conclusions were not summarily disregarded by Baxter, but were substantively critiqued by reviewing physician Dr. Attfield, who practiced in the same field as Dr. Smith and concluded that Dr. Smith's methodology was flawed and outdated.  *See Delta Family-Care Disability & Survivorship Plan v. Marshall*, 258 F.3d 834, 843 (8th Cir. 2001) ("Where the record reflects conflicting medical opinions, the plan administrator does not abuse its discretion in finding the employee not to be disabled.").

It appears to the Court that Baxter, in relying on the opinions of the physicians who reviewed Plaintiff's file, ultimately found Plaintiff not to be disabled due to a lack of correlation between Plaintiff's symptoms and her ability to perform the substantial and material duties of her job as Extruder/Blender Operator.  Accordingly, Defendant's decision to deny benefits was made after careful review, while comporting with ERISA and the clear language of the Plan.  All five *Shelton* factors therefore weigh in Baxter's favor.

**IV. Conclusion**

      For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's decision to deny benefits is AFFIRMED, Plaintiff's claim is DENIED, and this case is DISMISSED with prejudice. An order of judgment shall be filed contemporaneously herewith, with all parties instructed to bear their own fees and costs.

      IT IS SO ORDERED this 3rd day of May, 2013.

*/s/ P. K. Holmes,* III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE